*E-FILED - 5/13/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HUGO BRAMBILA,<br><br>        Petitioner,<br><br>  v.<br><br>T. FELKER, Warden,<br><br>        Respondent. | No. C 06-5369 RMW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

### INTRODUCTION

Petitioner Hugo Brambila, a California state prisoner who is proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for carjacking and robbery. In response to the order to show cause, respondent has filed an answer addressing the merits of the petition and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claim presented and will deny the petition.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Brambila369.hcruling.md

**BACKGROUND**

The charges against petitioner arose from his carjacking and robbery of a woman in 2003. The California Court of Appeal summarized the facts of the case as follows:

> On August 6, 2003, at approximately 11:45 a.m., [victim] Kejana Gullette parked her 1997 Chevy Suburban in Oakland. As she walked across the street, [petitioner] approached her. [Petitioner] pulled out a gun, pointed it at Gullette's head, and said, "Give me your purse and keys and walk away." Gullette obeyed. She ran into her doctor's office and talked to a 911 operator, stating that she had just been carjacked.
>
> On August 7, 2003, at about 3:30 a.m., at an apartment complex in San Leandro, resident Joseph Perkins heard the sounds of tools hitting the ground in the parking garage of the complex. Concerned about car break-ins that had occurred in the garage, he went down to investigate. Perkins observed an Hispanic female wearing a red fleece top standing next to a 1999 Chevy Suburban truck in the complex's parking garage. Perkins yelled out to the female, "Hey what are you doing?" She was startled and whispered to someone. Perkins then saw a pair of feet underneath the truck. The person underneath the truck was wearing black and white tennis shoes. Perkins went back upstairs and called 911. From his balcony, he saw [petitioner] wearing a black tank top, jeans, black and white shoes, and an earring. [Petitioner] was walking past Perkins's apartment with the Hispanic female Perkins had seen near the Suburban. Perkins saw [petitioner] holding a lug wrench which he threw away when the Hispanic female alerted [petitioner] that she saw Perkins on his balcony.
>
> At approximately 3:52 a.m., officers from the San Leandro Police Department responded to the location. Officer Cauraugh arrived first and noticed [petitioner] wearing a black tank top with a female wearing a red sweater coming out of the apartment complex area. Cauraugh informed Officer Agraviador that he had seen two people matching the description given over the radio. Within a few minutes, Officer Agraviador and Sergeant Hudson had detained [petitioner] and the Hispanic woman. By this time, [petitioner] was wearing the Hispanic woman's red sweater. Officer Cauraugh and Sergeant Hudson noticed [petitioner] was wearing a large earring on his left ear. The officers detained [petitioner] and placed him in the back of a police vehicle.
>
> Officer Agraviador then located a 1999 Chevy Suburban with the rims partially removed, up on blocks in one of the complex's underground parking garages. Sergeant Hudson found Gullette's 1997 Chevy Suburban also up on blocks in the parking garage. Sergeant Hudson contacted Gullette to come to the apartment complex for an in-field lineup. Gullette identified [petitioner], based on his physical features, his shoes, and his big earring. She also observed [petitioner] reach up to his left ear and throw his earring or something out the partially open window of the police car. After Ms. Gullette identified [petitioner], Officer Cauraugh and Sergeant Hudson noticed [petitioner] had slipped his handcuffs off from behind his back so that the handcuffs were now in front of him, and that he was no longer wearing his earring.
>
> Christopher Hodge was the owner of the 1999 Chevy Suburban, and also lived at the complex. He was contacted by police, and walked down to the parking garage to identify his car. He noted damage to the vehicle that was not there when he parked and locked his car the night before. Hodge also noticed [petitioner], who was sitting

> in the back seat of a police car, make a gesture with his hands toward the partially opened rear driver's side window of the car.

The People v. Brambila, No. A106558, 2005 WL 950588, at *1, 2 (Cal. Ct. App. April 26, 2005) ("Op.").

An Alameda County Superior Court jury found petitioner guilty of carjacking (Cal. Pen. Code § 215(a)), second degree robbery (Cal. Pen. Code § 211), receiving stolen property (Cal. Pen. Code § 496(a)), along with special allegations that petitioner personally used a firearm (Cal. Pen. Code §§ 1203.06(a)(1), 12022.5(a), 12022.53(b)), special allegations that were attached to the first two convictions. Op. at 1, 2.

Petitioner appealed. The California Court of Appeal for the First Appellate District, in an unpublished opinion, affirmed the judgment. Op. at 1. The California Supreme Court denied his petition for review. Pet. at 3. Petitioner filed this federal habeas action in 2006.

As grounds for federal habeas relief, petitioner alleges that the prosecutor's quoting of his un-Mirandized statement during trial violated his Fifth Amendment right against self-incrimination. Order to Show Cause at 2.

**STANDARD OF REVIEW**

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. (Terry) Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case the opinion of the California Court of Appeal. See Nunnemaker at 801-06; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. Id.

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

## DISCUSSION

Petitioner contends that his Fifth Amendment right against self-incrimination was violated when the prosecutor, in his opening statement, referred to statements petitioner made at the time of his arrest but before he was given the appropriate constitutional warnings as articulated in Miranda

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Brambila369.hcruling.md            4

1  v. Arizona, 384 U.S. 436 (1966). As part of this contention, petitioner asserts that the trial court's
2  instructions to the jury to disregard the prosecutor's statements "failed to fully counteract the
3  prejudice that resulted from the prosecutor's statement," especially considering that the
4  instructions were not given immediately after the prosecutor mentioned the statements. Pet., Ex.
5  1, P. & A. at 5. The state appellate court found that petitioner was not prejudiced by the delay and
6  stated that the trial court's admonition was "adequate to alleviate any potential prejudice flowing
7  from the prosecutor's remarks." Op. at 5.

8  The facts giving rise to petitioner's claim are summarized by the state appellate court as follows:

> During the prosecutor's opening statement, after referring to Gullette's and Hodges's anticipated testimony that they saw [petitioner] make a hand motion consistent with tossing something out of the police car window, the prosecutor added the following: "So [petitioner] does not have an earring in at this point. Officer Cauraugh goes back to him and says, 'Where is the earring?' The defendant says, 'I don't have no earring.' 'No, I know I saw you with an earring. Where is that earring? Did you swallow it? Where is the earring?' 'I don't have an earring.' [']Okay.[']"
>
> [Petitioner] made no objection to the prosecutor's discussion of this exchange with Officer Cauraugh. The court raised this issue on its own accord later that morning, during Gullette's direct testimony. The court noted that no Miranda warning had been given before Cauraugh questioned [petitioner] about the earring. Accordingly, the court concluded that no evidence of [petitioner's] responses would be admissible, and the prosecutor's statement about Cauraugh's exchange with [petitioner] was therefore improper and would have to be stricken from the record. FN1.
>
> FN1. The trial court also pointed out that the prosecution had previously stipulated, during an unreported discussion in chambers, that it would not attempt to offer any of the [petitioner's] statements to police in evidence. The prosecutor did not dispute the court's assertions or conclusions. He admitted his error, and explained that it had been made inadvertently.
>
> In response to the court's comments, [petitioner's] counsel moved for a mistrial. The court ruled that since the jury had been admonished twice that the statements of counsel are not evidence and since the statements were never admitted into evidence, an admonition from the court striking the prosecutor's statements and ordering the jury to disregard the comments would sufficiently cure the harm.
>
> The court proceeded to admonish the jury in pertinent part as follows: "During the opening statement by the Prosecutor, Mr. Nobles, he made reference to a statement [petitioner] may or may not have made to San Leandro police officers. That portion of the Prosecutor's opening statement is stricken and you are ordered to disregard it. You will hear no such evidence regarding any such statement, and that portion of the opening statement was improper. You are to disregard the Prosecutor's

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Brambila369.hcruling.md          5

>statement and treat it as though you had never heard it. Does everybody understand that? Okay. It happens often times that we do what is . . . referred to as unringing the bell. That is, sometimes an answer comes in, for example, before an objection was made . . . We strike the answer. We order you to disregard it. That's what we're doing here, number one. Number two, I will also remind you of what I told you in the preliminary instruction, and that is that the statements of counsel are not evidence. They are supposed to be a road map . . . to help direct you and to give you some orientation as to what you might expect during the trial. But I remind you once again that the statements of counsel are not evidence unless they both agree and stipulate to some particular piece of evidence.

Op. at 3.

Petitioner's claim is based upon Miranda v. Arizona, 384 U.S. 436 (1966). Miranda requires that a person subjected to custodial interrogation be advised prior to questioning that he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. Id. at 444. Habeas relief should be granted if the admission of statements in violation of Miranda "had a substantial and injurious effect or influence in determining the jury's verdict." Calderon v. Coleman, 525 U.S. 141, 147 (1998).

Petitioner's claim is without merit. Two points are clear. First, assuming, arguendo, that the statement was taken in violation of Miranda, petitioner has not shown that the trial court's strong admonitions to the jury failed to correct any harm. As the record shows, the trial court made it absolutely clear that the prosecutor's statements were not evidence and that the jury should disregard them entirely. Without evidence to the contrary, the court must adhere to the presumption that jurors follow their instructions. McNeil v. Middleton, 344 F.3d 988, 999-1000 (9th Cir. 2003).

Second, petitioner has not shown that the statements had a substantial and injurious effect or influence in determining the jury's verdict. At its worst, the statements relate to petitioner's alleged attempt to disguise his identity by removing his earring, an item noted by witnesses in their descriptions of the perpetrator. Admissible evidence regarding petitioner's alleged attempt to remove an earring was introduced at trial by the eyewitness Gullette, who testified that she observed petitioner make a motion toward his left ear and throw something outside the police vehicle. Ans., Ex. 3 (Reporter's Transcript, 4/1/04) at 54, 56. Because such admissible evidence

was presented to the jury, the prosecutor's statements cannot have, on the record before the court, prejudiced the jury. Furthermore, the statement is not an admission, or a particularly persuasive indicator of guilt. Rather, the statement itself reveals nothing except petitioner's denials that he had an earring. Without more, such a statement cannot by itself have prejudiced the jury. Also, it is also worth noting that even if the prosecutor had not made his statement, it is unlikely the jury would have reached a verdict favorable to petitioner, especially considering the strength of Gullette's eyewitness testimony and its corroboration by others.

As to petitioner's contention that the trial court's instructions to disregard were given too late to be effective, the court finds it to be without merit. Trial counsel made no objection when the prosecutor made the statement at issue, but rather the trial court brought up the issue in a recess meeting with trial counsel and the prosecutor. Ans., Ex. 3 at 41. At this meeting, the trial court stated that it would issue a corrective admonition and granted trial counsel time to draft the admonition. Id. at 42-43. Furthermore, the trial court instructed the jury before and after opening statements that statements by the attorneys are not evidence. Id. at 17, 20, 113.

Accordingly, the court finds that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. § 2254 (d)(1), (2).

**CONCLUSION**

The court finds that petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: 5/9/08

RONALD M. WHYTE
United States District Judge

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Brambila369.hcruling.md          7